ROBERT L. BLAND, Judge,
dissenting.
The state court of claims was called into existence by the Legislature of 1941 as an experiment. It is now in its probationary state, or formative period, and is not yet an established institution. It is especially' important to guard carefully against the creation of dangerous precedents for the recommendation of appropriations of the public revenues. There should be no award in a case where the right of the state or any of its agencies to exercise an essential governmental function is challenged. While the amount of the award in this case is small, the principle involved is great, and far-reaching in its scope and effect. The road commission, as an administrative department of the state, is given certain discretion in the performance of the duties imposed upon it by law, such as the duties incident to the repair and maintenance of the public highways and roads under its exclusive control and supervision. If it sees that encroachments on its road rights-of-way obstruct or impede the public use and travel thereon, who can say that it does not have the power to remove such obstructions and use such roads to the full width of the rights-of-way, if it be necessary to do so? Abutting property owners cannot direct the commission how or in what manner it shall discharge the duties imposed upon it by legislative authority. To do so would result in chaos and cause endless confusion and trouble.
The property of claimants lies on one side of what is known as the Reed Creek secondary road, 1.35 miles southwest of United States route No. 220, in Pendleton county. This road was established in 1859 and has ever since been maintained at public expense. The record does not disclose the width of the road at the time it was established, but it does show that it appears from record book A in the office of the clerk of the *414 county court of Pendleton county, that viewers were appointed to lay out the road in the year 1859, and that there is likewise a reference to the filing of their report, but the report itself has not been found. It is thought to have been destroyed when the courthouse was burned in 1924.
Reed creek runs through the land of claimants on the west side of the road and close to the traveled part of it. The fence enclosing the property was constructed between the creek and the outer edge of the traveled portion of the road and very near to the edge of the road. It is shown by the testimony of E. K. Bowman, a highway engineer of the road commission, that the traveled portion of the road is from 10 to 12 feet in width. This witness made a survey of the road showing its location, the location of a fence which is claimed to have been destroyed by respondent and a new fence thereafter built by claimants. A plat of his work was filed with his testimony. When asked if it was the claim of the state that the old fence maintained by claimants was on the right-of-way as established prior to the time that he made his survey, he answered: “Yes, sir, the fence was close enough that if you put a grader in there you couldn’t get a grader down without getting into it.” George D. Moyers, supervisor of roads for Pendleton county, and a witness introduced on behalf of the state, testified that he was familiar with the claim made that a portion of the fence of claimants was allegedly destroyed or damaged by the road commission and testified that the mail carrier and the school bus man had reported to him that the condition of the road was dangerous. He further testified that the creek runs right close to the road “And it had undermined the fence and the posts fell over and washed back pretty well— well, I would say to one track of the road. Then we went in there and we tried to get this old fence out which was covered up by the washout of the run. After we couldn’t get the fence out, we built the berm back up, slipped some big rocks down to widen the road to eliminate the dangerous part of it, and then after this was done these folks, Miss Mallow and her brother Paul, came and built a fence right along on the berm *415 that we built which sets the fence about three feet closer to the run.”
It seems clear to my mind that the fence of claimants which they charged to have been torn down or'covered up by dirt removed from the road was actually built and maintained on the road right-of-way.
In County Court of Raleigh County v. Minter, 103 W. Va. 386, it is held in point 2 of the syllabus as follows:
“Under sections 3 and 130, chapter 43, Code, making all county-district roads, however established, thirty feet in width measured fifteen feet on either side from the ‘center of the traveled way,’ the dedication in such case, in the absence of proof to the contrary, will be presumed to have been of a right-of-way thirty feet wide.”
Such presumption is not overcome in this case by any evidence found in the record. The statute cited expressly provides that in the absence of any other mark or record, the center of the traveled way shall be taken as the center of the road. It not infrequently happens that boundary fences are built upon road rights-of-way, but when the public use requires it they may be compelled to be removed.
“Any encroachment on a public street or highway is a ‘pur-presture,’ and, if the public use is impeded or rendered less commodious, such encroachment is generally not only a pur-presture, but also technically a ‘public nuisance’ regardless of the degree of interference with the common enjoyment.” Southeastern Pipe Line Company v. Garrett, Solicitor General, (Ga.) 16 S. E., 2nd Ed. 753.
“Where a road is established solely by an implied dedication or by prescription, its width is not extended by statute beyond fences on each side of the way constantly maintained by the owner of the land through the period of user.” Reip v. County Court of Calhoun County, 110 W. Va. 7, 156 S. E. 754. *416 The declaration in that case alleged ownership by the plaintiff of a farm for many years; that about 30 years prior to the suit, without obtaining any right whatsoever from him, the county court constructed and had since maintained a roadway through his land, and that he limited the width of the way to 20 feet by fences on either side of the way, from the time it was opened until December, 1928, when the county court again, without permission from him, tore down the fences on both sides of the road and widened the way to 30 feet. The case was heard and decided upon a demurrer interposed to the declaration. It went to the Court of Appeals and was there decided as above indicated.
The situation here presented is entirely different from the facts of that case, and the presumption is that the Reed Creek road has a width of 30 feet.
In re claim of Clark v. Road Commission, 1 Ct. Claims (W. Va.) 232, we stated in the opinion on page 233, as follows:
“All claims asserted against the state or any of its agencies must be established by satisfactory proof before awards may properly be made for the payment of them.”
Beula Mallow, one of the claimants, was the only witness who testified in support of the claim in this case. When asked to state what she had to say in relation to the claim, she answered: “There really isn’t much to it except the fact that this fence was destroyed, covered up, on or after April 28, 1943, which amounts to $30.25 to get it repaired.” The proof relied upon by claimants wholly fails, in my judgment, to show that their claim is a meritorious one against the state. The evidence clearly reveals that the fence in question actually occupied a -part of the road right-of-way.
I would deny an award and dismiss the claim.